The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is now in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Douglas Norris, Appeal No. 19-1842. Attorney McGillian, please introduce yourself for the record and proceed with your argument. Good morning. May it please the Court, Ines McGillian here for Douglas Norris. I would like to reserve two minutes for rebuttal. Yes, you may have it. Thank you. Mr. Norris raises four claims. He claims insufficient evidence on all four counts. He claims that the joint possession jury instruction was improper in this case. He claims that police expert opinion testimony was improperly admitted as lay opinion testimony. And finally, he argues that his felon in possession count, the indictment was defective for failing to list an essential element of that count of that charge under rehave. Now, three of these claims, the first three have been preserved and are reviewed de novo. The final one was raised for the first time on appeal and I wanted to correct my reply brief which represented that it was raised below and it was not. I'll start with the insufficiency argument. The evidence here was fatally insufficient on all four counts. Possession of contraband was an essential element to each count of conviction here and the cases in every circuit require more than mere presence in an apartment, particularly a multi-occupant apartment, and they require some nexus with the contraband and there was none here. All we have is the occasional presence of Mr. Norris in this the contraband in the closet, particularly nothing linking him to the zippered backpack in a closet and this backpack bore a logo which matched bags belonging to the other occupant of that bedroom. Now, with so little linking a defendant to contraband, the evidence is simply insufficient to attribute that contraband to him and that count should be vacated. Joint possession instruction was harmful prejudicial error and Mr. Norris raised this below. This claim is reviewed de novo. The government's brief concedes that nobody argued that Mr. Norris and Ms. Brown were acting together. The government concedes that no one argued that there was joint activity in possessing this contraband. For any jury instruction, there must be evidence supporting it and where there is no evidence or argument supporting it, the joint possession instruction was erroneous and it permitted a jury who is unsure which of the two may have possessed the contraband to decide it's a toss-up if they possess it jointly we can convict. There's controlling precedent in this circuit which actually requires either evidence or argument supporting a joint instruction and the government has totally ignored this in its brief. Ms. McGillian, was there prior surveillance of your client that associated him with drug trafficking? Not introduced to the jury. There was absolutely no evidence introduced to trial that Mr. Norris was involved in any drug trafficking activity. The government could have introduced that and yet it failed to do so. Had it done so, it would have had a much stronger case. However, the only surveillance introduced to trial was that Mr. Norris occasionally went to that apartment. Now, mere occupancy or cohabitation of apartment just simply isn't enough. Well, they introduced his relationship to the apartment because he had been to housing court, he had successfully defeated eviction, but your argument is that his association with the house in and of itself is insufficient because there's not a direct association with the contraband. Correct. Four minutes. What do you say? As I understand it, in the same closet where they found the backpack with the contraband, they found men's clothes and mail addressed to Norris. Yes. Now, the mail was old, according to the testimony, and the clothing, we don't know to whom that clothing belonged. We don't know. I guess it was men's clothes. It wasn't hers. I guess, but do we know how Ms. Brown dressed? There's no evidence in the record on how Ms. Brown dressed. There's no evidence that anyone saw Mr. Norris accessing that closet. There's no evidence that Mr. Norris ever touched or had any association with the contraband in the backpack. What did he say about his statement when he said, I'm the one you want? Who knows what that means, and the fact that it could mean several different things which are equally plausible means that it has very little relevance. Now, Mr. Norris had just been brought to a housing court for eviction because of pretty minor property damage to his apartment. We don't know, and there's no evidence in the record, demonstrating how far Mr. Norris got to his front door. We know that he approached his apartment. I'm sorry. Can we go back to the shoes and the mail clothes? Was there testimony alone that these were mail clothes, or were there photographs of what was in the closet, or were any of the clothing and shoes seized and introduced? There was, yes, it was photographed, but neither seized nor introduced. We don't know what the clothing looked like, and we can't say definitively to whom it belonged. I don't know how Ms. Brown... Wait a minute. You say it was with the photographs introduced? Not of the clothing. There were photographs of the shoe boxes, and also testimony of the shoe size. However, I personally don't know to whom those shoes belonged. Furthermore, a backpack is a highly portable item, and we don't know how long that backpack was there. It's pure guesswork. Were there photographs of the shoes? Did they open the boxes and photograph the shoes? No, they didn't. I haven't seen any, and they weren't produced to trial counsel and discovery, and they were not introduced at trial. Now, if Mr. Norris did have shoes in this closet, we would need some evidence that he had accessed the closet in the three days during which that contraband may or may not have been there. I don't know how long that backpack... I'm sorry, counsel. What is the basis for that argument? His mail is found in the closet. You try to dismiss that on the basis that it's old mail. Shoes that are apparently men's shoes are found in the closet. As you say, who knows how long the backpack was there? Maybe it was there when the mail addressed to him was there. So, you're saying no reasonable jury could conclude from all of the evidence my colleagues have mentioned that the backpack was not his or associated with him, and the contents were not a number of different things that the jury would need to pile up, inference upon inference. Counsel, let me stop you again. You keep saying, I don't know. The question is not what you know. The question is whether there is sufficient evidence for a reasonable jury to draw the inference. Correct? That is, you're correct, and I've misstated the standard. The standard is that of an objective reasonable jury, but courts... Counsel, that is time. We'll hear you on rebuttal. Thank you. Thank you, Attorney McGillian. Please mute your audio and video. Attorney Richardson, please unmute your audio and video and proceed with your argument. May it please the court, my name is Robert Richardson, and I represent the United States on this appeal. I'll start with the sufficiency of the evidence, and the government maintains that there was ample evidence viewed in the light most favorable to the government, from which a reasonable jury could conclude that the defendant constructively possessed the loaded firearm in the backpack in the closet, the roughly 80 grams of crack cocaine and powder cocaine found in the backpack in the closet of bedroom one, as well as the drugs found in the kitchen, in the wine box on top of the cabinets. If all we had was the backpack, and the backpack matched the woman's other items, you'd have a pretty skinny case, wouldn't you? Well, to begin with, Your Honor, I think counsel may have misstated that it matched other items possessed by Ms. Brown. I think the evidence was that Ms. Pimentel saw her leave the apartment with a bag that had a Michael Jordan logo on it. The closet contained not just a backpack with a Michael Jordan logo on it, but boxes and boxes of sneakers, men's size 10 and a half and 11. Now you're avoiding my question. If it was just the backpack that they'd found, you'd have a tough case, wouldn't you, particularly with the Michael Jordan logo? I think I might well have a tough case if it were just that, Your Honor. So then we add in men's clothes. What do the words men's clothes mean? What clothes were these that only men wear and that women don't? Well, Your Honor, I'm not sure that there was testimony specifically about what it was, but it would be clothing. What was the testimony? The clothing, the testimony was clothing. The specific testimony about specific items were men's sneakers. Some of the boxes were opened. So you can see some of the boxes themselves, some of the boxes were opened and contained sneakers. And as I indicated, there are men's sizes 10 and a half and 11. So. What size foot did she have? No evidence of what size foot she had. What size foot did he have? Well, the jury saw him. He's an average size, appeared to me and therefore to the jury to be an average size man. So what about his feet? The jury then you could say could just assume that she didn't have a size 10 and a half. Well, I think they could assume that. And again, we're focusing now on the, simply on the clothing, but I think the jury. You haven't told us what clothing you're talking about. It's, I think I did, Your Honor. I think the testimony was men's clothing. I don't think it got any more specific than that, other than the shoes. So it could have been jeans. It could have been jeans. And you know, no women wear jeans, I assume. Sure, Your Honor. So I'm wondering what value the testimony is when someone just says without a picture, without identifying it, they just say men's nose, clothes. How does the jury have any idea at all what they mean? I think jurors, like most people can use their common sense and their experience in the world and know that typically men's clothing is larger. And was there a description of it, larger clothing or description of how large she was? No, Your Honor. Again, I think other than the shoes themselves, I don't think there was any specific discussion of particular men's clothing.  So, so what else are you relying on other than the sneakers and the indeterminate term clothing? Yes, it would be the mail addressed to the defendant at that address, which I believe was this was the search was in June. I believe it was from either January or February. It was introduced in evidence. So the jury did have that. There was a fact that within the week before the search, the defendant himself appeared in landlord tenant court, indicated he was the tenant. It was a tenancy at will and ultimately one possession. There was a fact that when the police showed up in January in response to five minutes, apparently a 911 call, the defendant and Ms. Brown were there. The upshot of it was that it was Ms. Brown was the one who packed her bags and left. There is a fact that he was in the apartment during the three days prior to the search. There was evidence he was there the night the two subletters began subletting a room. The fact that. But how is that evidence that the drugs belong to him and not her? Well, it shows his access to the apartment, Your Honor. And hers also. Well, it shows hers also, yes. But no one argued that the drugs belong to her. No, I believe the argument was on behalf of the defendant, at least that it was if anyone either of them possessed it, it was she. She was the one who was there when the police arrived in the morning. There was testimony about open scales with drug residue on it. I think the suggestion was she must have been in the middle of packaging drugs or something of the sort when the police showed up. So, if I could finish with the sufficiency and then get to the joint possession argument. In terms of what was in the backpack, we know that the gun was processed for DNA. We know it had a mixture of at least three people on it. We know at least one of the people who touched it was a male. So, you know that some man touched the firearm, perhaps most importantly, or not most importantly, but for these.  It could have been a woman. So, they couldn't tell at least one of whom might have been a woman, at least one of whom definitely was a male is what the stipulation read. So, how does that help you? So, we know that a man possessed the firearm. A man had touched the firearm. That's how it helps me. If I could just get to the last point, which I think a reasonable jury certainly could find was essentially an ambition on the part of the defendant that what the police had just found was his, was the statement when he was pulled over and simply asked for his name. The response was, I'm the one you're looking for. This occurred. So, his apartment had just been raided? Correct. Why is the assumption that that was an acknowledgement of guilt as opposed to someone just raided my apartment? I don't know what's going on. Yeah. Well, again, Your Honor, it's not so much an assumption. It's what a fair inference is that a jury could draw. So, the evidence was that after Detective Donahue went back to the police station and had helped turn in the evidence, he went back to the scene, located the car that Mr. Norris was known to use, parked behind it. This was at about 10 minutes to 8. He saw Mr. Norris come from the front of the property. He didn't have a line of view on the front door, but saw him come from the property, get into the car, drive off. He had the car pulled over, and that's the response he gave. I'm the one you're looking for. The government argued, and I think the jury could certainly fairly infer, that he had just been in the building. He not only was there testimony, he was there during the three days prior, but the police had seen him there, I think, five days before. And the fair inference was he'd gone to the apartment prior to Detective Donahue showing up. He'd gone in, went into the apartment. He obviously had access to it anyhow, but the door was wide open at this point. Went in, saw that his backpack, his firearm, and his drugs were missing. Came out, started driving off, and I think a jury, more than reasonably, could infer that when he said, I'm the one you're looking for, it was an announcement that he's one the police were looking for in connection with what had just been recovered from the apartment. It's a little bit of a leap there. I mean, the police were looking for him, right? For, I don't think there is any evidence that the police make a practice of going out and looking for somebody for driving with an expired license. No, no, no. I mean, the police having raided the apartment were looking for him. Yes, they were. And that doesn't, the fact that the police is looking for him, how does that mean, you want us to read that as saying, I'm the one whose gun and drugs you found? I think that's a fair inference, yes. Counsel, that's time. Thank you. Counsel, Ms. McGillian, yes, you are on mute. Go ahead. I've unmuted myself, if I may. Your Honors, I just want to point out that the evidence in this case is not just thin, it's constitutionally insufficient. Constitutionally insufficient, 10 years of a man's life hinge on inference stacked upon inference. There is no evidence that Mr. Norris ever accessed that closet. There is no evidence that Mr. Norris knew about or had access to any of the contraband. How do you respond to the mail, though? How old was that mail? The government just told us that it was from several months ago, and there's no evidence. That doesn't mean he didn't access it. No, go ahead. I'm sorry, Judge. There's no evidence that he ever read that mail, opened that mail, touched that mail, or entered that closet in the relevant time period. There's simply nothing tying Mr. Norris to the contraband. And I should point out that the government has not cited one single case from this circuit or any other circuit that would place this case comfortably in the realm of sufficiency. And I have cited numerous cases from several jurisdictions, several circuits. Ms. McGillian, was the mail introduced into evidence? I do not believe so because I have not seen it. My understanding is that it was not. Were you trial counsel? No, I was not, unfortunately. OK. So you don't know if the mail was introduced into evidence? I do not believe it was. I have not. It was certainly not photographed. And I would have to double check my list of exhibits, but it's something that I certainly would have wanted to look at if it had been introduced. I do not believe it was introduced. The mail, as far as I know, judging from the testimony that I've read, was old mail. And there's no evidence. So to my mind, that helps the government. It doesn't help you. The fact that he is continually seen in the apartment, that there is mail there from a few months earlier, that tends to show he's been there repeatedly. He is seen there repeatedly. He's seen with her repeatedly. And I don't understand why a reasonable jury could not infer from that that the items in the closet with his old mail were his. Because it's too attenuated, Your Honor. It simply requires the jury to pile and stack. Guess what? The government has to show specifically he was there during the immediate period before the search. It's not only presence during the period before the search. It's also showing some nexus to contraband. If there had been a witness saying, I saw Douglas Norris fetch his clothing out of that closet, I saw Douglas Norris touch or carry that backpack, I saw Douglas Norris open a mailbox, I saw Douglas Norris even cooking in the kitchen, which he was not. Counsel, excuse me. That really isn't the issue before us. And who knows whether such evidence exists or not. The question is whether the evidence of record was sufficient. Do you have any other points you would like to make? Well, the police opinion testimony in this case was extremely prejudicial, particularly the testimony about this hydraulic press. If anything, it's a textbook example of why the judge's role as a gatekeeper is so critical when police testify as experts. OK, we have the point. Thank you. Thank you. Thank you. That concludes our argument in this case. Attorney McGillian, Attorney Richardson, please disconnect from the hearing at this time.